NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-483

KHALIL MAFHOUM

vs.

DEPARTMENT OF STATE POLICE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case presents a claim under G. L. c. 151B, § 4, alleging that the defendant Massachusetts Department of State Police (MSP), discriminated against the plaintiff, a former Massachusetts State Trooper, based on his race, and engaged in disparate treatment against him based on his race, in terminating him from employment with the MSP during his probationary period.[1] Although the plaintiff concedes that he violated MSP Department Policy Rule TPF-20 regarding the reporting of what he described as a minor car accident involving

_____

[1] The complaint also alleged a violation of G. L. c. 151B's prohibition on age discrimination. At argument in the trial court, counsel conceded that at all relevant times, the plaintiff was thirty-nine years old, and therefore not within the protected class for an age discrimination claim. The plaintiff does not contest that conclusion here and has not appealed the dismissal of the age discrimination claim.

his cruiser, he avers that the severity of the punishment -- termination -- was due to his race. The plaintiff emigrated to the United States from Morocco and avers that he is Muslim-American. Indeed, he avers that at the time of his termination, he was the only Muslim-American State police trooper.[2]

The complaint was dismissed on the ground that the complaint was filed outside the statute of limitations, and it is from that dismissal that the plaintiff appeals. "We review the allowance of a motion to dismiss de novo, accepting as true all well-pleaded facts alleged in the complaint. We draw all reasonable inferences in the plaintiff's favor and determine whether the allegations plausibly suggest that the plaintiff is entitled to relief on [his] legal claim." (Citations omitted.) Fairhaven Hous. Auth. v. Commonwealth, 493 Mass. 27, 30 (2023).

The plaintiff was terminated by the MSP on November 13, 2018, according to the complaint. It is undisputed that the statute of limitations runs "three years after the alleged, unlawful practice occurred." G. L. c. 151B, § 9. Although three years from termination was November 13, 2021, because of the Supreme Judicial Court's orders regarding court operations during the COVID-19 pandemic, if the statute of limitations

_____

[2] We assume without deciding that if his termination were due to these characteristics or his status as a person of color, it would amount to actionable race discrimination under the statute.

2

would otherwise have run on that date, it was extended until February 28, 2022. The plaintiff, however, filed his complaint on June 10, 2022.

At argument below, counsel for the plaintiff, who now appears before us pro se, argued that the discovery rule tolled the statute of limitations until, on July 1, 2019, the plaintiff received the results of a Freedom of Information Act (FOIA) request in which, according to the complaint, the material he received from MSP revealed that the only alleged, comparable disciplinary actions undertaken against probationary officers were for acts of misconduct dramatically more serious than those upon which his termination was based. Before us, he makes an argument that he is entitled to equitable tolling and in the alternative, that his counsel was ineffective in late-filing his complaint.

Though his brief is not a model of clarity, the plaintiff appears to raise four different arguments under the rubric of equitable estoppel. To begin with, at one point he essentially describes equitable estoppel as encompassing what amounts to the discovery rule. To the extent, if any, he can be understood, though, to raise the discovery rule, the claim is without merit.

"A cause of action will accrue when the plaintiff actually knows of the cause of action or when the plaintiff should have known of the cause of action." Riley v. Presnell, 409 Mass.

239, 244 (1991).  We will assume that in a discrimination case, that occurs when a plaintiff has "ascertained sufficient information . . . to believe that they . . . had been subjected to discriminatory treatment."  Silvestris v. Tantasqua Regional Sch. Dist., 446 Mass. 756, 768 (2006).

The plaintiff argued below that he only came to believe that his termination was discriminatory when he received from the Commonwealth, in response to his FOIA request, documents showing that other people terminated had been found to have engaged in far more serious misconduct than he.  That date of receipt is the only date of discovery that he asserts rendered his filing timely.

This argument, however, founders on the fact that his complaint -- which we must take as true for purposes of a motion to dismiss -- states that

> "[s]hortly after his termination, the Plaintiff learned that other probationary members of his recruit training class were also involved in various other forms of misconduct equal to or more egregious than that of the Plaintiff, however, those probationary employees were not terminated from their employment by the MSP. . . .  None of these other probationary employees from previous classes who were investigated for, or charged with disciplinary issues, were of the same age or racial identity as the Plaintiff. . . .  None of these probationary employees who received discipline short of termination were minorities."

The complaint then goes on to list seven other probationary officers who were not minorities who were disciplined short of termination, and at least two of whose infractions were arguably

4

more serious than the plaintiff's infractions.  But the plaintiff does not contend that his knowledge of these incidents arose from the documents he received in response to his FOIA request, which relate to two officers (whose racial backgrounds are unidentified) other than the seven officers listed in the complaint.  There is also no suggestion from the plaintiff that if the statute of limitations were triggered not on his termination date but "shortly after his termination" when he "learned" of these seven other disciplined probationary officers, his complaint would as a result have been timely.

The knowledge described certainly objectively gave the plaintiff reason to believe he had been subjected to discriminatory treatment.  Consequently the statute of limitations began to run no later than the date on which he acquired or reasonably could have acquired that knowledge.  The judge correctly determined that that date was not when the plaintiff received the FOIA response, and the plaintiff identifies no other date that would put his claims within the limitations period.  Consequently, we agree with the motion judge that the statute of limitations had run by the time the complaint was filed.

Plaintiff next argues that discrimination

"continues to occur whenever Mafhoum's attempts or seek [sic] any employment opportunity in a law enforcement agency, in addition to the psychological effects and

5

> flashbacks he had suffered wherever the appellee passes a place he was called for service, responded to an accident and conducted his duties, till present day is reminded of the pain and suffering caused by Department of the State Police."

This was not a basis raised below for the tolling of the statute of limitations, nor were any of the facts he alleges included in the complaint. Consequently this argument is thus waived, and, on this record, without merit.

The pro se plaintiff next argues that he is entitled to equitable estoppel because he was affirmatively misled by the defendant into not asserting a timely claim, see Andrews v. Arkwright Mut. Ins. Co., 423 Mass. 1021, 1022 (1996), or the defendant encouraged or cajoled him into inaction. See Cherella v. Phoenix Techs. Ltd., 32 Mass. App. Ct. 919, 920 (1992). But the complaint contains no allegations of any such conduct by the defendant. Finally, he argues that he was misled by his attorney into inaction. But even if that were true, the actions of one's own counsel, as opposed to the defendant, provide no basis for equitable tolling. See Andrews, supra at 1022.

In addition to equitable estoppel, the plaintiff brings a claim for ineffective assistance of counsel. This, however, is a civil action, and generally one cannot obtain a new trial in a civil case by way of a claim for ineffective assistance of counsel.

"A claim of ineffective assistance of counsel is a well-established ground for a collateral attack on a decision in a criminal case. Such a claim is not a basis for a collateral attack on a civil judgment, where a litigant's sole recourse for his attorney's negligence is an action for malpractice. As a general rule, there is no right to the effective assistance of counsel in civil cases." (Citations omitted.)

Commonwealth v. Patton, 458 Mass. 119, 124 (2010). As this case does not fall into any exception to that general rule, the plaintiff's claim about ineffective assistance of counsel is without merit.

Judgment affirmed.

By the Court (Rubin, Blake & Shin, JJ.[3]),

Assistant Clerk

Entered: April 2, 2024.

---

[3] The panelists are listed in order of seniority.