# Robert C. Powers *vs.* H.B. Smith Company, Inc., & another.[1]

No. 96-P-625.

Hampden. February 10, 1997. - May 20, 1997.

Present: Brown, Kaplan, & Perretta, JJ.

*Practice, Civil,* Default, Relief from judgment, New trial, Judgment notwithstanding verdict, Attorney's fees. *Anti-Discrimination Law,* Age, Termination of employment, Prima facie case, Burden of proof, Attorney's fees, Damages. *Employment,* Discrimination, Termination. *Evidence,* Relevancy and materiality. *Damages,* Under anti-discrimination law, Emotional distress.

In a civil action, a Superior Court judge did not abuse his discretion in granting the plaintiff's motion pursuant to Mass. R. Civ. P. 60(b)(6) to vacate a default judgment entered against the plaintiff for failure to appear at a pretrial conference. [660]

In an action brought under G. L. c. 151B, alleging age discrimination in employment, in which the plaintiff established a prima facie case and the defendant articulated a legitimate nondiscriminatory reason for its conduct, the evidence was sufficient for the jury reasonably to conclude that the defendant's asserted reason was a pretext. [660-662]

At the trial of an age discrimination case, the judge properly excluded certain evidence as irrelevant. [662-663]

The defendant in a civil action was not entitled to contend on appeal that the trial judge improperly excluded certain evidence, where the judge's ruling was not final and the defendant never thereafter demonstrated the evidence was relevant. [663-664]

This court declined to consider an argument on appeal that was inadequate and which did not rise to the level of acceptable appellate argument within the meaning of Mass. R.A.P. 16(a)(4). [664-665]

In an age discrimination case, the judge's award of damages on remittitur was not excessive and there was sufficient evidence of emotional distress to support the award of damages thereon. [665-666]

In a civil action the judge did not abuse his discretion in denying the defendant's motion for a new trial; [666] or in denying the defendant's motion for judgment n.o.v. where the defendant had failed to renew its motion for a directed verdict at the close of all the evidence [666].

[1]Mestek, Inc. The plaintiff does not challenge the judgment entered for his supervisor, Donald F. Schmidt.

Where the plaintiff in an age discrimination action had not first filed a complaint against one defendant with the Massachusetts Commission Against Discrimination, the judge did not err in allowing that defendant's motion for summary judgment. [666-667]

In an age discrimination in employment case, the plaintiff was entitled to an award of attorney's fees under G. L. c. 151B, § 9, where the judge did not make any finding that special circumstances would render such an award unjust. [667]

CIVIL ACTION commenced in the Superior Court Department on February 3, 1992.

Motions for summary judgment were heard by *Constance M. Sweeney,* J.; the case was tried before *William H. Welch,* J., and posttrial motions were heard by him.

*Peter J. Stasz* for H.B. Smith Company, Inc.

*Rosemary J. Cooper* for the plaintiff.

*Timothy J. Ryan* for Mestek, Inc.

BROWN, J. This case, that seemingly neither party wanted to win, causes us to navigate around numerous procedural tangles and wade through several critical missteps. As will be seen, after this curious journey, all we are left with is the uncomfortable sense that the ultimate result is not "inconsistent with substantial justice." Mass.R.Civ.P. 61, 365 Mass. 829 (1974).

After being discharged from his position as a quality control inspector with H.B. Smith Company, Inc. (Smith), the plaintiff, Robert C. Powers, filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) alleging age discrimination.[2] On February 3, 1994, the plaintiff, with the MCAD's assent, filed this action in Superior Court. In the complaint, the plaintiff, for the first time, named Mestek, Inc. (Mestek), as a defendant. Prior to trial, Mestek moved for summary judgment contending that, since it was not named in the MCAD complaint, the plaintiff's claim against it was barred. The motion judge agreed and entered judgment for Mestek.

Returning a verdict on special questions, a Superior Court jury found the plaintiff was discharged "by reason of age discrimination" and awarded him $750,000 in damages. The

---

[2]The plaintiff did not pursue a claim under the Federal Age Discrimination in Employment Act (ADEA).

defendant then filed a motion for a new trial. The trial judge denied Smith's motion, but reduced the damage award to $350,000. Both parties appeal from the ensuing judgment. The defendant argues that: (a) it was error to allow the plaintiff's motion for relief from a default judgment; (b) the plaintiff failed to establish a prima facie case of age discrimination and the jury's verdict was against the weight of the evidence; (c) certain evidence was improperly admitted or excluded; (d) the damages were excessive; and (e) the trial judge abused his discretion in denying its posttrial motions. The plaintiff, in turn, contends that the trial judge erred in denying his request for attorney's fees. The plaintiff also argues that summary judgment was improperly entered for Mestek.

Based on the evidence presented at trial, the jury would have been warranted in finding the following facts. Smith is a manufacturer of boilers. The plaintiff began working for Smith in January, 1982, as a quality control inspector.[3] The plaintiff's duties included the processing of returned parts. When defective parts were returned, the plaintiff would check to see if they were still under warranty and then arrange for the parts to be returned to the vendors. The plaintiff also inspected parts purchased from vendors to ensure that they met company specifications.

In 1986 or 1987, Smith opened a new plant approximately five miles away from its main facility and moved the assembly line for residential boilers to the new plant. Prior to that time, the assembly work had been performed at the main plant. Initially, the plaintiff assisted in monitoring the new assembly line, as Smith had not yet hired an inspector for the new facility. Marianne Fortier was later hired as quality control inspector for the new plant. The plaintiff, however, filled in for Fortier when she was on vacation, performing Fortier's duties with the exception of the "100th boiler test."[4] The plaintiff had not been trained to perform that test. The plaintiff also performed several quality control functions that Fortier had not.

Sometime prior to 1990, Smith began to experience

---

[3]Prior to that time, the plaintiff worked in a quality control department for another company.

[4]This test was performed on every hundredth boiler coming off the assembly line to ensure that it was made to specification.

financial difficulty. In February, 1990, Mestek made a tender offer for approximately forty-eight percent of Smith's shares. Thereafter, a Mestek official, John Kaddaras, at the behest of Smith's board of directors, conducted an analysis of Smith's organizational structure. The board had concluded that "major restructuring" was necessary in order for Smith to stay afloat. Another Mestek official (Walter Markowski) met with Smith employees, including the plaintiff. At that time, there were three inspectors in the quality control division: the plaintiff, Fortier, and Ray Deso. Markowski recommended that the number of quality control inspectors be reduced from three to one. Markowski conveyed his opinion to Kaddaras that Fortier possessed the most "technical ability." A few days later, Kaddoras spoke with Donald F. Schmidt, the plaintiff's supervisor, who, when asked, opined that Fortier was the "most capable" of the three. At the time of the layoffs, Schmidt and Fortier were romantically involved. Kaddaras recommended that Fortier be retained, and the plaintiff and Deso were subsequently laid off.

1. *Defendant's appeal.*

a. *Rule 60(b) motion.* Before moving on to the other issues in this case, we pause briefly to dispose of Smith's claim that the judge abused his discretion in vacating the default judgment entered earlier against the plaintiff for failure to appear at a pretrial conference. See in this regard *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 433-434 (1979). Upon review of the record, we conclude that the judge, pursuant to Mass.R.Civ.P. 60(b)(6), 365 Mass. 829 (1974), reasonably could have found extraordinary circumstances warranting relief from the judgment. See *Parrell* v. *Keenan*, 389 Mass. 809, 814-815 (1983). See generally 11 Wright, Miller & Kane, Federal Practice and Procedure § 2864 (2d ed. 1995).

b. *Age discrimination claim.* The alleged discriminatory act arises in the context of a reduction in force decision by the plaintiff's employer. In analyzing claims of discrimination brought under the Massachusetts antidiscrimination statute (G. L. c. 151B, § 4) we look to the familiar three-stage order of proof paradigm articulated in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-804 (1973). See *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 134-136 & n.5 (1976). In stage one, the plaintiff bears

the initial burden of establishing a prima facie case of discrimination. *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 447 (1996).

In stage two, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions. *Ibid.* Finally, in stage three, the burden shifts back to the plaintiff to show that the employer's articulated reason is not the true reason, but rather a pretext. *Ibid.* As "Massachusetts is a pretext only jurisdiction" (*Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 443 [1995]), if successful in stage three,[5] "the plaintiff is entitled to recovery for illegal discrimination under G. L. c. 151B." *Id.* at 444-445.

Contrary to Smith's contention, our review of the record indicates that the plaintiff met his initial burden of establishing a prima facie case of age discrimination. The plaintiff showed that: (1) he is a member of a class protected by G. L. c. 151B (he was over the age of 40); (2) he was qualified for the position of quality control inspector; (3) he was terminated; and (4) a similarly or less qualified younger person was retained.[6] See *Tardanico, supra* at 447 n.4; *LeBlanc* v. *Great American Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993). See also *Finney* v. *Madico, Inc., ante* 46, 50 (1997). "The exact prima facie proof required can vary depending on the factual situation." *Harrison* v. *Boston Financial Data Servs., Inc.*, 37 Mass. App. Ct. 133, 137 (1994). See *Blare* v. *Husky Injection Molding Sys. Boston, Inc., supra* at 441.

It is uncontroverted that Smith articulated a legitimate nondiscriminatory reason for its conduct. According to Smith, the plaintiff was laid off as a result of corporate restructuring. Based on Mestek's recommendations, Smith decided to reduce

[5]In *St. Mary's Honor Center* v. *Hicks*, 509 U.S. 502 (1993), the United States Supreme Court adopted for use in the Federal courts the "pretext plus" third stage order of proof. For recent discussion of the comparison between the Massachusetts and Federal positions, see *Blare* v. *Husky Injection Molding Sys. Boston, Inc., supra* at 442-444.

[6]Two protected categories were potentially at issue here. The retained employee is female and also over forty years of age. (At the time of the trial, Powers was 65, and Fortier was 52.) The question whether there is a hierarchy or priorities within or between protected categories was not raised at trial, and we thus have no occasion to address it. Nor was it argued at trial that if Fortier had been terminated, she might have had a valid claim of employment discrimination based on gender, one arguably stronger than the case at bar.

the number of quality control inspectors from three to one. Smith stated that after comparing the qualifications and duties of Fortier and the plaintiff, it concluded that Fortier possessed better qualifications. See and compare *Finney* v. *Madico, Inc., supra* at 50-51.

Thus, the pivotal phase is stage three. On appeal, Smith maintains that there was no reasonable basis for the jury to conclude that its asserted reason was a pretext. We disagree. At trial, Smith emphasized the fact that the plaintiff was unable to perform the "100th boiler test." However, Richard A. Lemelin, a former employee of Smith, testified that depending on the number of boilers produced, only one or two were tested a week and that each test took approximately one or two hours. Moreover, Lemelin indicated that the test was not that difficult to perform and that no outside training was required. It was Lemelin who trained Fortier to perform the test. In addition, Schmidt, the plaintiff's supervisor, indicated that the only job that the plaintiff had not performed was the "100th boiler test," and that Fortier had not performed some of the plaintiff's duties. Moreover, given the romantic relationship between Schmidt and Fortier, a finder of fact would be entitled to discredit some or all of Schmidt's testimony.[7] In these circumstances, the jury reasonably could have concluded that Smith's asserted reason was a pretext,[8] and "not the real reason[] for the action." *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. at 443, quoting from *Brunner* v. *Stone & Webster Engr. Corp.,* 413 Mass. 698, 700 (1992).

c. *Evidentiary rulings.* At trial, the plaintiff, without objection, introduced in evidence two written evaluations of his

[7]It is not disputed that prior to making his recommendation as to which employees should be retained, Kaddaras sought and received Schmidt's opinion.

[8]Smith argues that, since this is not a classic discharge case, but rather is a so-called "reduction-in-force firing" case (see *Finney* v. *Madico, Inc., supra* at 50), the plaintiff was required to show that Smith failed to treat age neutrally in reducing its payroll. However, Smith did not raise this contention in its motion for a directed verdict. Nor did it object to the jury charge on this basis. See *Kinchla* v. *Welsh,* 8 Mass. App. Ct. 367, 373-374 (1979). To the contrary, Smith indicated that it was satisfied with the charge. Although Smith correctly points out that the plaintiff failed to introduce evidence of Fortier's age in its case in chief, this apparent oversight does not provide a basis for granting relief from the judgment, as Smith did not move for a directed verdict on this basis. Moreover, evidence of Fortier's age was put before the jury during Smith's defense.

work performance. Later, Smith sought to introduce a written assessment of Fortier's work. The plaintiff objected, claiming that Fortier's evaluation was irrelevant. In its offer of proof, Smith argued that, since the qualifications of both the plaintiff and Fortier were at issue, the evaluations were relevant. The judge then asked the Smith representative whether he considered that evaluation in making his decision. He indicated that he had not. The judge then excluded the evidence.

On appeal, Smith maintains that it was error for the judge to exclude the evaluation because (a) it was relevant, and (b) in its absence, the jury could not properly evaluate the defendant's decision to retain Fortier over the plaintiff. "The decision whether evidence is relevant remains within the sound discretion of the trial judge." *McLaughlin* v. *Vinios*, 39 Mass. App. Ct. 5, 8 (1995). "A trial judge will not be reversed on review except for palpable error." *Ibid.* Here, given that the defendant appears to have conceded that the evaluation played no role in its decision, we find no abuse of discretion.[9] Moreover, even if the evaluations were relevant, we discern no prejudice to Smith's case, as evidence of the quality of Fortier's work was introduced during Schmidt's testimony.[10] See *Pina* v. *McGill Dev. Corp.*, 388 Mass. 159, 164 (1983) (no prejudice found where excluded evidence was merely cumulative of other evidence pointing to the same fact).

The defendant further argues that the judge erred in failing to admit in evidence two disciplinary letters concerning the plaintiff. The record indicates, however, that the judge's ruling was not final. The judge clearly indicated that he would admit at least one of the letters if Smith could demonstrate that it had relied on the letter in making its determination.[11]

---

[9]We are unimpressed with the defendant's contention that the evidence should have been admitted because the judge had earlier allowed the plaintiff's job evaluations to come in. The defendant chose not to challenge their admission.

[10]Schmidt testified that Fortier performed very well on the job and that she received good evaluations.

[11]After the judge had excluded the first of the two letters, the following

Smith did not mention the matter again during the course of the trial.[12] "Such an omission fatally 'dispose[s] of [an] exception to a ruling which expressly was not final and which related to the order of proof, a matter [well within] the discretion of the trial judge.' " *Cooke* v. *Walter Kidde & Co.*, 8 Mass. App. Ct. 902, 904 (1979), quoting from *Donahue* v. *Kenney*, 330 Mass. 9, 12 (1953). Thus, the defendant cannot now contend that the letters were improperly excluded.

The defendant also argues that the judge erred in permitting evidence of a romantic relationship between Fortier and Schmidt. However, the defendant's argument with respect to this matter — consisting of five sentences — is inadequate, and provides us little assistance in evaluating the merits of the claim. The defendant fails to cite any authority in support of its contention and, taken all in all, the defendant's treat-

---

exchange occurred.

DEFENSE COUNSEL: "Your Honor, this one I do think did affect the employment decision."

THE JUDGE: "This is 1986."

PLAINTIFF'S COUNSEL: "Right. This was when Mr. Schmidt was the assistant manager and this was at a direction of a manager who wasn't there in 1990."

THE JUDGE: "If this was entered into or considered by them in evaluating him and coming to a conclusion who they were going to chose and who they were going to let go I would think this would be admissible."

PLAINTIFF'S COUNSEL: "In depositions it was stated that nobody looked at the files or anything. And I asked, specifically, whether it was considered. They said none of the personnel files were looked at."

THE JUDGE: "Well, —"

DEFENSE COUNSEL: "(Interposing) If you want we can wait for Mr. Kaddaras."

THE JUDGE: "I will admit it for identification and later if somebody gets on and testifies this was relevant or considered it in anyway you can put it in at that point."

[12]Moreover, it does not appear that a foundation was ever laid. In fact, the Mestek representative in charge of interviewing Smith employees indicated that he did not look at the personnel files before making his recommendations.

ment of the issue does not rise to the level of acceptable appellate argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).[13]

d. *Damages-Remittitur.* Smith claims that the damage award, despite the remittitur, is excessive.[14] Compare *Labonte* v. *Hutchins & Wheeler,* 424 Mass. 813, 823-826 (1997); *Davis* v. *Walent,* 16 Mass. App. Ct. 83, 96 (1983). "The field of discretion of the trial judge in these matters is very broad. Only in rare instances can it be ruled that there has been an abuse of discretion amounting to an error of law" (citations omitted). *Davis* v. *Walent, supra* at 96-97. Smith first argues that to the extent the damages award represents compensation for front pay, they are excessive. Specifically, Smith contends that, since Fortier testified that she was laid off in 1992, the plaintiff is not entitled to compensation beyond that date. However, the precise circumstances attending Fortier's termination are not clear from the record. What is clear is that the plaintiff had intended to work for Smith until age sixty-five. Therefore, even if Smith's assertion is correct, absent a showing that the plaintiff would not have been able to transfer to another position (or branch of the company), there is no basis for disturbing the judge's ruling.

Contrary to Smith's contention, there was sufficient evidence of emotional distress. The plaintiff, who at that time was a member of Alcoholics Anonymous (AA), testified that he attended more AA meetings as a result of his layoff. Although he did not seek independent counseling as a result of his termination, the plaintiff indicated that he availed himself of the counseling services provided by AA. "[I]n c. 151B cases an award of emotional distress damages can be sustained even in the absence of . . . psychiatric consultation" (citations omitted). *Labonte* v. *Hutchins & Wheeler,* 424 Mass. at 824. We conclude there is not sufficient record support to find an abuse of discretion. See *Bartley* v. *Phillips,* 317 Mass. 35, 43-44 (1944).

[13]We note that the judge reasonably could have concluded that the evidence was relevant in that it went to Schmidt's credibility in assessing Fortier's qualifications and work performance.

[14]For the standard of review of the question whether damages are excessive, see *Freeman* v. *Wood,* 379 Mass. 777, 781 n.9 (1980). See also *Labonte* v. *Hutchins & Wheeler,* 424 Mass. 813, 824-825 (1997).

*e. Posttrial motions.* With regard to the defendant's several posttrial motions we are obliged at the outset to point out that the defendant's failure to renew its motion for a directed verdict at the close of all the evidence is a critical misstep. See, e.g., *Martin* v. *Hall,* 369 Mass. 884-885 (1976). But see Mass.-R.Civ.P. 61, 365 Mass. 829 (1974). We address each motion in turn.

As grounds for a motion for a new trial, Smith attacks, among other things, the plaintiff's prima facie case, the damages award, and the weight of the evidence. The standard that a trial judge is to apply on a motion for a new trial in a civil case is too well known to be restated. See, e.g., *W. Oliver Tripp Co.* v. *American Hoechst Corp.,* 34 Mass. App. Ct. 744, 748 (1993), and cases cited therein. See also *Bartley* v. *Phillips,* 317 Mass. at 42. In light of the above discussion, we do not think the judge abused his discretion in denying Smith's motion for a new trial. In addition, the judge stated in his memorandum and order denying the motion that "there were inconsistencies in some of the evidence" rebutting the plaintiff's prima facie case.

As to the defendant's claim that the damages were excessive, as has already been mentioned above, the judge, pursuant to Mass.R.Civ.P. 59(a), 365 Mass. 827 (1974), ordered, we think properly so, that $400,000 of the verdict be remitted. Compare *Davis* v. *Walent,* 16 Mass. App. Ct. at 96. We likewise reject Smith's collateral contention that the excessive nature of the verdict demonstrates that it was the result of juror prejudice or bias. Smith's argument consists entirely of conjecture and is not supported by the record.[15]

The judge did not abuse his discretion or commit an error of law by denying Smith's Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974), motion for judgment n.o.v., for the reason, if no other, that Smith failed to renew its motion for a directed verdict at the close of all the evidence. See *Michnik-Zilberman* v. *Gordon's Liquor, Inc.,* 390 Mass. 6, 9 (1993).

2. *Plaintiff's cross appeal.*

---

[15]For example, Smith suggests that some of the jurors might have been laid off in the past, and could have used the verdict as a means of "getting even."

a. *Summary judgment.* The plaintiff contends that the motion judge erred in allowing Mestek's motion for summary judgment. The motion judge concluded that, since the plaintiff did not name Mestek in his MCAD complaint, his claim against Mestek was barred. There was no error. "Resort to judicial process is not available to a party claiming age discrimination . . . unless that party has first lodged a complaint of unlawful discrimination with the MCAD within six months of the occurrence of the discriminatory event." *Tardanico* v. *Aetna Life & Cas. Co.,* 41 Mass. App. Ct. at 444. See *Charland* v. *Muzi Motors, Inc.,* 417 Mass. 580, 583 (1994). At the time the plaintiff filed his complaint with the MCAD, he was aware of Mestek's involvement in his layoff. The plaintiff could have moved to amend his MCAD complaint, but failed to do so. Thus, we conclude that Mestek was entitled to summary judgment.

b. *Attorney's fees.* We agree with the plaintiff that he is entitled to attorney's fees. In denying the plaintiff's request, the trial judge reasoned that, since a contingency agreement existed between the plaintiff and his attorney, the plaintiff was not entitled to attorney's fees. However, we find no such limitation in the statute. General Laws c. 151B, § 9, as inserted by St. 1974, c. 478, in pertinent part, provides that "[i]f the court finds for the petitioner it *shall* . . . award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust" (emphasis supplied). Since the trial judge did not indicate that the award of attorney's fees, in the circumstances, would be unjust, we conclude that the plaintiff is entitled to attorney's fees. Cf. *Fontaine* v. *Ebtec Corp.,* 415 Mass. 309, 324 (1993). We, however, believe that based on the complexity of the case and on our evaluation of counsel's over-all performance, particularly the time reasonably spent on this case, the award should be modest in comparison to the $14,430 requested. The case is remanded to the Superior Court for the purpose of awarding attorney's fees to the plaintiff in accordance with this opinion. The judgment is otherwise affirmed.

*So ordered.*