Hinkle, J.
Plaintiff A. Francis Tamasy sued his former employer, the Commonwealth of Massachusetts, for age discrimination in violation of G.L.c. 151B. A jury returned a verdict in plaintiffs favor, awarding him $200,000 in damages for back pay and $200,000 for emotional distress. The jury also found that the defendant acted wilfully and that the damages should thus be doubled.
The Commonwealth has moved (1) for judgment notwithstanding the verdict or, alternatively, for a new trial, (2) for remittitur and (3) to alter the judgment. Under Rules 50 and 59 of the Massachusetts Rules of Civil Procedure, these three motions may be joined. After hearing and for the reasons set forth below, the Commonwealth’s motion for judgment notwithstanding the verdict is DENIED; its motion for new trial is ALLOWED in part unless plaintiff consents to remitti-tur, and its motion to alter the judgment is ALLOWED.
The plaintiff moved to amend the judgment by doubling the actual damages and also moved for attorneys fees. At the hearing on the post-verdict motions I stated that the question of attorneys fees would be deferred until this decision issues. In light of the jury’s finding of wilfulness and doubling, the damages awarded by the jury (subject to remittitur of the emotional distress damages as set forth below) are to be doubled. Thus, that motion is ALLOWED.
BACKGROUND
For purposes of evaluating the Commonwealth’s motions, I consider the trial evidence in the light most favorable to plaintiff with all reasonable inferences drawn in his favor.
In April of 1992, plaintiff was hired for the position of director of support services at Tewskbury State Hospital, a hospital owned and operated by the Commonwealth. Plaintiff was 55 years old at the time. He did not sign a written employment contract and was never promised a permanent position. His job entailed management supervision over the day-to-day operations of the hospital’s service departments but no payroll or fiscal responsibilities. Richard Moro, who had interviewed and hired plaintiff, was his supervisor. As associate executive director of finance and general services at the hospital, Moro was responsible for supervising the payroll, reviewing employee overtime sheets and approving overtime payments.
In the spring of 1993, a human resources manager notified Moro of unauthorized claims and payments for overtime. Moro did not correct this overtime abuse and did not alert plaintiff of the problem until August of 1993. On October 27, 1993, Moro informed plaintiff of a one million dollar budget cut and a job freeze. He then asked plaintiff to resign, claiming that plaintiff was responsible for the overtime abuse. Plaintiff refused to resign.
After this meeting, plaintiff received a letter of termination which gave as the reason for termination his “[flailure to exercise fiscal management responsibility [over his] subordinates in the Laundry/Linen Department resulting in excessive and abusive amounts of overtime for the past six months.” Other than two managers who each received one day suspensions, no other employees were disciplined in connection with the overtime abuses. Soon after plaintiffs termination, Moro gave plaintiffs files to Christine Sprague who was approximately eight years younger than plaintiff and had previously supervised the hospital’s food services department.
Plaintiff sought new employment immediately after his discharge, applying for hundreds of jobs through 1998. He earned between $3000 to $4000 a year as a telemarketer from 1994 to 1996 and $1460 in 1997. Throughout this time, he felt humiliated and depressed. He attended support groups to deal with the situation.
DISCUSSION
I. Motion for Judgment Notwithstanding the Verdict or, Alternatively, for New Trial
A motion for judgment notwithstanding the verdict must be denied if there is “anywhere in the evidence, from whatever source derived, any combination of circumstances [that] could be found from which a reasonable inference could be drawn in favor of the [plaintiff].” Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 121 (1992) (quotation omitted). Where there is a “sufficiency of the evidence to warrant the verdict favoring [the plaintiff], the fact that there ‘was some or even much evidence which would have warranted a contrary [verdict]’ is of no consequence." Deerskin Trading Post v. Spencer Press, Inc., 398 Mass. 118, 125 (1986) (quotation omitted).
The jury found the Commonwealth liable for age discrimination in violation of G.L.c. 151B. Massachusetts courts interpreting c. 151B follow the three-stage order of proof established by the U.S. Supreme Court under the federal antidiscrimination provisions of Title VII of the Civil Rights Act of 1964. Wheelock College v. Massachusetts Comm’n Against Discrimination, 371 Mass. 130, 134-36 (1976) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)); Matthews v. *130 Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997).
In the first stage, a plaintiff must prove a prima facie case of discrimination by a preponderance of the evidence. Labonte v. Hutchins & Wheeler, 424 Mass. 813, 821 (1997). The elements necessary to show prima facie discrimination vary depending on the particular case. Id. (quoting Beal v. Selectmen of Hingham, 419 Mass. 535, 544 (1995)). As I charged the jury, the initial burden in an age discrimination case may be met by the plaintiff showing that he was over the age of 40, qualified for the position, terminated and replaced by a similarly or less qualified younger person. Powers v. H.B. Smith Co., 42 Mass.App.Ct. 657, 661, rev. denied, 425 Mass. 1105 (1997); see also Loeb v. Textro, 600 F.2d 1003, 1008 (1st Cir. 1979) (prima facie case of age discrimination under federal law is established if plaintiff was (1) within protected age group, (2) demoted or discharged, (3) replaced by a younger person or persons outside the protected age group and (4) qualified to do the job); Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995) (prima facie showing of age discrimination is not especially burdensome).
Once an employee establishes a prima facie case of discrimination, the burden of production shifts to the employer who may rebut the presumption of discrimination by articulating a legitimate nondiscriminatory reason for its decision. Blare v. Husk Injection Molding Sys. Boston, Inc., 419 Mass. 437, 440-41 (1995); Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. at 128. If the employer advances a nondiscriminatory reason, the case reaches the third stage in the order of proof, where the employee, to prevail, must show that the employer’s justification is pretextual. Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. at 128; Dartt v. Browning-Ferris Indus, Inc., 427 Mass. 1, 12 (1998).
Having reviewed the trial evidence in a light favorable to plaintiff, I find and rule that, although the evidence was by no means overwhelming, plaintiff produced sufficient evidence to warrant the jury’s findings of discrimination and wilfulness. See Powers v. H.B. Smith Co., 42 Mass.App.Ct. at 661; Loeb v. Textron, 600 F.2d at 1008.
Plaintiff established that he was over the age of forty at the time of his termination and therefore was a member of a class protected under c. 15IB. He presented evidence regarding his qualifications for his position, including his previous relevant work experience, a positive evaluation of his work made by Moro in December of 1992, and Moro’s testimony that plaintiff was not fired for inadequate performance of his own duties. TR III at 28-29; TR II at 9; TR I at 22.[2] Despite these qualifications, plaintiff was terminated. The jury could have found that his job responsibilities were assumed by Christine Sprague, who was younger and no better qualified than plaintiff, if that. Defendant offered a nondiscriminatory reason for its action: it allegedly terminated plaintiff because of his failure to manage subordinates in the laundry /linen department, which resulted in excessive and abusive amounts of overtime. Through evidence of Moro’s knowledge that oversight of employee overtime was not plaintiffs responsibility and testimony that plaintiff had no authority to assign or approve overtime, the jury could have found that the Commonwealth’s articulated reason for plaintiffs termination was not its actual reason. From such facts, the jury could have inferred that the Commonwealth’s justification was pretextual. The Commonwealth’s motion for judgment notwithstanding verdict therefore is denied.
Although I will not disturb the jury’s finding of discrimination, I still must evaluate whether a new trial is necessary because of the Commonwealth’s claim that the damages awarded were excessive. Anew trial is warranted only “if [the trial court is] satisfied that the jury ‘failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law.’ ” See Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. at 127. The “size of the verdict alone does' not determine whether it is excessive. "The only practical test to apply ... is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.’ ” Labonte v. Hutchins & Wheeler, 424 Mass. at 824-25 (quotation omitted). The Commonwealth challenges (1) the jury’s award ofbackpay and (2) the jury’s award of emotional distress damages. Under the applicable standard, only the second challenge has merit.
1. Back Pay for At-will Employee
The Commonwealth contends that as an at-will employee, plaintiff is precluded .from recovering back pay. Arguments relating to one’s status as an at-will employee, however, are “beside the point” under G.L.c. 15 IB. See Conway v. Electro Switch Corp., 402 Mass. 385, 388 n.2 (1988). As the Supreme Judicial Court “noted in another context involving a contract terminable at will and a claim for prospective damages, ‘[t]he damages are assessed not for a breach of the contract, but for the direct and proximate results of the wrongful acts.’ ” Id. (quotation omitted).
The Supreme Judicial Court decisions cited by defendant for the proposition that at-will employees should not be awarded back pay — in the absence of promises of pretermination procedures or disciplinary procedures that effectively convert their at-will status to something more definite — were decided before Conway. Moreover, none of the cases was decided under c. 151B. See Maddaloni v. Western Mass. Bus Lines, Inc., 386 Mass. 877, 884 (1982) (in breach of contract claim, employee at will only entitled to benefits contemplated or included in contract); Kravetz v. Mer *131 chants Distribs., Inc., 387 Mass. 457, 463 (1982) (breach of contract claim); DeRose v. Putnam Management Co., 398 Mass. 205, 211 n.4 (1986) (breach of contract claim; at-will employee entitled to back pay award of $9000 but no recovery for future lost wages and benefits); see also Treadwell v. John Hancock Mut. Life Ins. Co., 666 F.Sup. 278, 286 (D.Mass. 1987) (deceit claim).
While plaintiffs status as an at-will employee does not bar his recovery of back pay as a matter of law, I still must consider whether, as defendant contends, the jury determined plaintiffs damages by speculation or guess. See Conway, 402 Mass. at 388.
As previously stated, the jury awarded plaintiff $200,000 for back pay.[3] The evidence established that plaintiffs annual salary at the time of his termination was $40,000. The jury could have found with a reasonable degree of certainly that, had defendant not wrongfully terminated plaintiff, he would have continued to earn this amount in addition to benefits for the 4.6 years between his termination and the date of judgment. Evidence of plaintiffs attempts to find other employment, which resulted in several low-paying jobs, could have shown that he fulfilled his duly to mitigate damages; the jury’s back pay award appears to reflect an appropriate reduction for plaintiffs minimal earnings from his termination to the date of judgment.
2. Emotional Distress Damages.
The Commonwealth seeks a reduction of the jury’s award of $200,000 in emotional distress damages on grounds that it is not supported by substantial evidence and is excessive. Plaintiff testified that he was depressed and humiliated by his discharge and his inability to secure new employment. He offered no expert testimony to support his emotional distress claim. Conceding that expert testimony is not necessary to sustain an award of emotional distress, defendant contends that in the absence of evidence that plaintiff had trouble sleeping, eating, or functioning on a daily basis, or was hospitalized or medicated as a result of his depression, plaintiffs testimony of depression and a feeling of humiliation is insufficient to establish emotional distress.
Damages for emotional distress can be inferred from a finding of discrimination “as a normal adjunct of the [employer’s] actions . . . even in the absence of physical injury or psychiatric consultation.” Labonte v. Hutchins & Wheeler, 424 Mass. at 824 (quotation omitted); City of Salem v. Massachusetts Comm’n Against Discrimination, 44 Mass.App.Ct. at 646. Yet, although the juiy’s award of some amount for emotional distress may have been warranted based on its finding of discrimination, a question remains as to whether that award was excessive.
A court may not disturb an award of damages unless it was unsupported by substantial evidence in the record, i.e., “greatly disproportionate to the injury proven or represented a miscarriage of justice.” Labonte v. Hutchins & Wheeler, 424 Mass. at 824 (“Determining whether damages are excessive is difficult because ‘[c]laims for damages for emotional distress are inherently difficult to prove with certainty, to rebut, and to evaluate’ ”) (quotation omitted). Even though the plaintiff in Labonte suffered from depression for which he sought counseling, the court concluded that $500,000 was an excessive award for emotional distress given the fact that the plaintiff was never hospitalized or medicated and was able to find a new job. 424 Mass. at 825.
Although plaintiff testified that he went to various support groups, he was vague about his counseling. He introduced no oral or documentary evidence of any visit to a psychiatrist, psychologist or other counselor. He did not testify to any physical manifestation of distress. He offered no evidence that he even saw a doctor for depression, was hospitalized, or was prescribed any medication for depression. Nor was there evidence that plaintiff had difficulty sleeping or eating as a result of his firing.
Thus, in light of the paucity of evidence of emotional distress offered during trial, I find and rule that the award of $200,000 for emotional distress is disproportionate to the injury proven and leads me to conclude that the jury was influenced either by mistake or a desire to punish the Commonwealth. See Labonte v. Hutchins & Wheeler, 424 Mass. at 824.
After considering the evidence in this case and the emotional distress damages awarded in similar cases,[4] I conclude that the amount the jury awarded was based on excessive speculation, and I rule that fair and reasonable compensation for plaintiffs emotional distress is $50,000. See Handrahan v. Red Roof Inns, Inc., 43 Mass.App.Ct. 13, 14, rev. denied, 425 Mass. 1107 (1997) (jury award of $50,000); Brownlie v. Kanzaki Specialty Papers, Inc., 44 Mass.App.Ct. 408, 409, rev. denied, 427 Mass. 1104 (1998) (jury award of $50,000); Brown v. Trustees of Boston Univ., 674 F.Sup. 393, 394-95 (D.Mass. 1987), aff'd in part, vacated in part, 891 F.2d 337 (1st Cir. 1989), cert. denied, 496 U.S. 937 (1990) (award of $15,000); see also Dartt v. Browning-Ferris Indus., Inc., 427 Mass. at 2 (jury award of $16,000 emotional distress damages not challenged on appeal); College-Town v. Massachusetts Comm’n Against Discrimination. 400 Mass. 156, 161, 169 (1987) (MCAD award of $10,000). But see City of Salem v. Massachusetts Comm'n Against Discrimination, 44 Mass.App.Ct. at 646 (evidence that plaintiff was “stressed ... out” and “basically hurting” sufficient to sustain $100,000 award for emotional distress).
Under Rule 59(a), “[a] new trial shall not be granted solely on the ground that the damages are excessive until the prevailing party has first been given an opportunity to remit so much thereof as the court *132 adjudges is excessive.” Accordingly, plaintiff has 30 days to remit $150,000 of the $200,000 that the jury awarded him for emotional distress. If plaintiff chooses not to remit this amount, a new trial shall be held on the issue of emotional distress damages. See Waucantuck Mills v. Magee Carpet Co., 225 Mass. 31, 33 (1916) (when grounds for new trial relate only to damages, “disassociated from every other contributing, related or vitiating cause,” new trial should treat only damages); Herwitz v. Massachusetts Bay Transp. Auth., 353 Mass. 594, 600 (1968).
II. Motion to Alter Judgment
In its motion to alter judgment, the Commonwealth requests that the payment of interest be excluded from the award. It is settled law that interest does not “lie against the Commonwealth ... in the absence of express statutory authorization.” Boston v. Massachusetts Comm’n Against Discrimination, 39 Mass.App.Ct. 234, 245 (1995); City of Salem v. Massachusetts Comm’n Against Discrimination, 44 Mass.App.Ct. at 646; see also Gurley v. Commonwealth, 363 Mass. 595, 600 (1973) (provisions for interest payments under various statutes “suggest that the Legislature will authorize such payments expressly when they are intended”).
Plaintiff argues that authority for assessing interest against the Commonwealth under c. 151B should be inferred from the fact that the Commonwealth is an employer subject to c. 15 IB and the fact that the statute “shall be construed liberally for the accomplishment of the purposes thereof.” See c. 151B, §§1, 9. Plaintiff thus concedes the absence of express statutory authorization for the payment of interest against the Commonwealth under c. 151B. See Boston v. Massachusetts Comm’n Against Discrimination, 39 Mass.App.Ct. at 245. Because plaintiff does not cite and I do not find any authority for imposing interest on the award against the Commonwealth under c. 151B, the Commonwealth’s motion to exclude the payment of interest is allowed.
ORDER
For the foregoing reasons, the Commonwealth’s motion for judgment notwithstanding the verdict is DENIED. Its motion for new trial is ALLOWED only as to the issue of emotional distress damages and only if plaintiff does not remit $150,000 of the $200,000 emotional distress award, and its motion to alter the judgment is ALLOWED so that interest is excluded. The plaintiffs motion to amend to double the judgment is allowed. If plaintiff agrees to remit the amount stated above, judgment shall enter for him in the amount of $500,000 (which includes the doubling of both the $200,000 back pay award and the reduced to $50,000 emotional distress award).
The Commonwealth is to file its objections, if any, to plaintiffs pending request for attorneys fees within 14 days. A hearing, if necessary, will then be held on the fee issue.

 “tr" represents the trial transcript; the Roman numeral represents the date of trial.

 Originally I asked the juiy only one actual damages question (Special Question 4). After their return of the verdict in light of the responses on Special Questions 2, 3 and 4, I sent the jurors to deliberate further, asking them to separate their damages into the factors they found. I did this to ensure proper appellate review. The jurors responded to that supplemental special question by stating that they awarded $200,000 in back pay and $200,000 in emotional distress damages.

 My conclusion that the jury’s award of $200,000 for emotional distress damages is excessive does not rely on other cases. I nonetheless used comparison as a tool to determine fair compensation. See Labonte v. Hutchins & Wheeler, 424 Mass. at 825-26 n. 17.